IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL REYNOLDS, | : |
| Plaintiff | : No. CV-09-2072 |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, et al. | : |
| Defendants | : |
| | : (Electronically Filed) |

### DECLARATION OF DON YOUNG

I, Don Young, declare under penalty of perjury in accordance with 28 U.S.C§ 1746 based upon my knowledge or upon information obtained from records routinely maintained during the operation of the Pennsylvania Department of Corrections("DOC"), whose entries are made at or near the time by, or from information transmitted by, a person with knowledge as a normal part of operating the DOC:

   1.   I am employed by the Pennsylvania Department of Corrections as a Corrections Employment and Vocational Coordinator at the State Correctional Institution at Frackville, a position I have held since November, 2009. Before that I was employed as a Records Supervisor at the State Correctional Institution at Mahanoy ("SCI-Mahanoy") from March, 2008 until November, 2009.

ATTACHMENT 1

2. In that capacity, I maintained, *inter alia,* inmate sentencing records. When the need arose, I also communicated with judges and staff in the courts of common pleas regarding inmate sentences and their computation.

3. This lawsuit arises from Mr. Reynolds' confinement at SCI-Mahanoy.

4. In March of 2006, I received Grievance # 223095 from Mr. Reynolds in which he complained that he was being confined beyond his maximum sentence.

5. I reviewed the records and discovered what had occurred.

6. Records show that on May 11, 2006, Reynolds was found guilty of contempt of court and terroristic threats at MC0485/2006 in Philadelphia.

7. On July 1, 2006, Mr. Reynolds was sentenced by the Court of Common Pleas of Montgomery Count at CP5353/2003 to a term of six months to one year on different criminal charges.

8. Reynolds received credit for time spent in the Montgomery County Prison on the charges at CP5353/2003 from February 6, 2006 to July 11, 2006.

9. On September 12, 2006, Mr. Reynolds was sentenced by the Court of Common Pleas of Philadelphia County at MC0485/2006 to a term of one year to two years for contempt of court and terroristic threats.

10. The Commitment Form related to the sentence at MC0485/2006 stated that Mr. Reynolds was to be given pre-commitment credit for the period of February 6, 2006 to September 12, 2006.

11. Reynolds' initial Sentence Status Summary showed his maximum release date on MC0485/2006 as February 8, 2008.

12. Later in 2006, Robert Durison, Philadelphia County Prison's Director of Classification, wrote to the Department of Corrections informing DOC staff that Mr. Reynolds was not entitled to receive pre-commitment credit on the sentence at MC0485/2006 because he was in custody as a result of the criminal charges for which he was sentenced by Montgomery County.

13. A later Sentence Status Summary computed Reynolds' maximum release date on MC0485/2006 as May 9, 2008.

14. Eligibility for pre-commitment credit is controlled by 42 Pa.C.S. § 9760 which allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed."

15. Pennsylvania courts have held that once an individual has been sentenced by a Pennsylvania Court, he is no longer in custody as a result of a criminal charge or charges for any other offense. *See Commonwealth v. Lloyd*, 353 Pa. Super. 241, 509 A.2d 868(1986), attached as Exh. 1.

16. After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time is ended. *Id.*

17. Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. *Id.*

18. A sentenced prisoner is not entitled to receive a duplicate credit for this same time period on a separate sentence subsequently imposed for another offense. *Id.*

19. Based upon *Lloyd*, affording Mr. Reynolds credit on both sentences would result in his receiving duplicate credit.

20. Following *Lloyd*, the Commonwealth Court of Pennsylvania in *Oakman v. Department of Corrections et al.* held that pre-commitment credit is controlled by the trial court's order rather than by a prison credit letter. *See Oakman v. Department of Corrections et al.*, 903 A.2d 106 (Pa. Commw.)2006, attached as Exh. 2.

21. The directions given in *Lloyd* and in *Oakman* resulted in conflicting results with respect to the calculation of pre-commitment credit for Mr. Reynolds.

22. To obtain information as to what the Philadelphia Judge intended with respect to MC0485/2006, on April 21, 2008, I wrote two letters to Judge Shirdan-Harris who had sentenced Reynolds. *See* Letters Dated April 21, 2008 to Judge Shirdan-Harris, attached as Exhs. 3 and 4, respectively.

23. I responded to Reynolds in writing on his Grievance #223095 explaining what I had learned and informing him that I had written to Judge Shirdan-Harris for guidance. *See* Response dated April 23, 2008 to Grievance #223095 attached as Exh. 5.

24. In June, 2008, I received correspondence from Judge Shirdan-Harris stating that she wanted the credit she had given Reynolds applied to his sentence at MC0485/2006.

25. Applying the credit meant that Reynolds was immediately eligible for release.

26. I promptly took the steps necessary to have Reynolds released and he was released on June 10, 2008.

27. Neither I nor any of the other officials or employees employed by the Department of Corrections have authority to release prisoners based solely upon their requests or demands.

28. Neither Secretary Beard nor Superintendent Kerestes had involvement in computing his sentences.

Date: ___9/3/10___   _____
                     DON YOUNG

Westlaw

509 A.2d 868
353 Pa.Super. 241, 509 A.2d 868
**(Cite as: 353 Pa.Super. 241, 509 A.2d 868)**

Page 1

H

Superior Court of Pennsylvania.
COMMONWEALTH of Pennsylvania
v.
Michael Harry LLOYD, Appellant.
Argued Dec. 17, 1985.
Filed March 21, 1986.
Reargument Denied June 3, 1986.

Defendant was convicted of theft by unlawful taking or disposition in the Court of Common Pleas, Criminal Division, Berks County, No. 79144201, Saylor, J., and he appealed. The Superior Court, No. 03351 Philadelphia 1984, Popovich, J., held that: (1) evidence was sufficient to sustain conviction; (2) trial counsel was not ineffective for failing to present defense witnesses as trial counsel denied that defendant gave him names of witnesses; (3) defendant was not entitled to credit for time served while awaiting trial, as he was then also serving federal sentence and state sentence imposed in another county; and (4) charges could not be dismissed under Interstate Agreement on Detainers Act due to remand of defendant to federal custody after trial and before new trial was granted.

Affirmed.

Montemuro, J., concurred in result.

West Headnotes

**[1] Larceny 234 🗝64(7)**

234 Larceny
   234II Prosecution and Punishment
      234II(B) Evidence
         234k54 Weight and Sufficiency
            234k64 Effect of Possession of Property Stolen
               234k64(7) k. Possession Accompanied by Other Incriminating Circumstances. Most Cited Cases
Evidence was sufficient to establish beyond reasonable doubt that theft had occurred and defendant had committed theft where defendant was in possession of pedigreed dairy cows marked distinctly on ears and around neck with registration numbers, owner produced documents verifying ownership, and limited use of dairy cows and their cumbersome nature, and general time frame in which theft occurred led to conclusion that defendant's possession of cows was "recent." 18 Pa.C.S.A. § 3921(a).

**[2] Criminal Law 110 🗝1924**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1921 Introduction of and Objections to Evidence at Trial
               110k1924 k. Presentation of Witnesses. Most Cited Cases
     (Formerly 110k641.13(6))
Trial counsel for defendant, charged with theft by unlawful taking or disposition, was not ineffective for failure to present certain defense witnesses where, at evidentiary hearing on counsel's ineffectiveness, trial counsel denied that defendant had given him names of witnesses who could testify that they had sold property alleged to have been stolen to defendant. U.S.C.A. Const.Amend. 6.

**[3] Sentencing and Punishment 350H 🗝1158**

350H Sentencing and Punishment
   350HV Sufficiency and Construction of Sentence Imposed
      350HV(D) Credits
         350Hk1156 Prior Confinement
            350Hk1158 k. Pretrial Confinement. Most Cited Cases
     (Formerly 110k1216.1(3))
Defendant convicted of theft by unlawful taking or disposition was not entitled to credit against sentence for time served in county while awaiting trial where defendant had lengthy criminal record and

EXH. 1

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

http://web2.westlaw.com/print/printstream.aspx?sv=Split&prft=HTMLE&fn=_top&mt=W...   8/31/2010

509 A.2d 868
353 Pa.Super. 241, 509 A.2d 868
**(Cite as: 353 Pa.Super. 241, 509 A.2d 868)**

Page 2

was serving federal sentence and state sentence imposed in another county at same time. 19 P.S. § 898 (Repealed).

[4] Extradition and Detainers 166 ⇐58

166 Extradition and Detainers
    166II Detainers
        166k58 k. Custody, Transfer, and Return of Prisoner. Most Cited Cases
Charge of theft by unlawful taking or disposition could not be dismissed against defendant over whom temporary custody had been obtained through lodging of detainer with federal authorities, on theory he was returned to federal custody before retrial, where record showed he was granted new trial due to ineffective waiver of right to counsel. 42 Pa.C.S.A. §§ 9101 et seq., 9101, Arts. IV, IV(e); U.S.C.A. Const.Amend. 6.

**\*\*869 \*243** Michael J. Connolly, Reading, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., Reading, for Com., appellee.

Before CIRILLO, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence which was imposed upon appellant, Michael Lloyd, after he was convicted by a jury of theft by unlawful taking or disposition. 18 Pa.C.S.A. 3921(a).[FN1] We affirm.

    FN1. The court granted a demurrer on the burglary and criminal trespass charges.

Appellant raises a number of issues in this direct appeal. They are (1) whether the verdict was contrary to the law, contrary to the evidence, and contrary to the weight of the evidence; (2) whether the evidence was insufficient to support a verdict of guilty beyond a reasonable doubt; (3) whether the trial court erred in (a) finding that the appellant had waived permanently his rights under Pa.R.Crim.P. 1100; (b) in finding that the prosecution had exercised due diligence in attempting to bring the case to retrial after a new trial had been granted; (c) in permitting testimony of a police officer despite the fact that the officer's testimony **\*244** was stricken later; (d) in permitting the prosecution to introduce evidence as to the value of the stolen items after the prosecution had rested its case; and (e) in imposing a harsh sentence which failed to give appellant credit for time served. Appellant also contends that trial counsel was ineffective for (a) failing to file a pretrial motion to suppress evidence; (b) for failing to present testimony regarding a violation of the Interstate Agreement on Detainers and for failing to preserve this issue; (c) for failing to object to appellant's appearance in court because appellant was wearing prison garb; and (d) for failing to present certain defense witnesses. For the following reasons, we must reject appellant's contentions.

Viewing the evidence in a light most favorable to the verdict winner, the prosecution, the record establishes these facts:

On October 5, 1979, the victim, Dean Hartman, left the barn area of his family's dairy farm in Bern Township, Berks County, at approximately 8:00 p.m. Dean Hartman returned to the farm at 12:00 midnight to conduct a routine check. At 6:00 a.m., the next morning, Hartman discovered that a portion of the fence at the north end of the barn was down. Upon closer examination of the area where the fence had been damaged, Hartman noticed tire tracks **\*\*870** which led to the north end of the barn where the missing dairy cows had been kept. The tire marks ended within several feet of a piece of concrete which had been chipped from the base of the barn entrance.

On this same morning, at approximately 6:00 a.m., the appellant was observed by a police officer entering the driveway of his farm on Casino Drive in Hallow Township, New Jersey. During this time, appellant was driving a 1979 maroon and silver

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

509 A.2d 868
353 Pa.Super. 241, 509 A.2d 868
**(Cite as: 353 Pa.Super. 241, 509 A.2d 868)**

Page 3

pick-up truck and trailer which was manufactured by General Motors Corporation. Four black and white Holstein dairy cows were seen through the slats of the trailer.

Upon exiting the truck, appellant was arrested by a New Jersey state trooper on unrelated charges. When the trooper *245 questioned appellant regarding ownership of the cows, appellant stated that he had ownership papers for the cows inside the truck. Appellant explained that the cows were being moved from one of his pastures. Appellant then was taken into custody. In the meantime, a detective from the New Jersey State Police Department, searched the front seat and the glove compartment of appellant's truck and found no evidence that the cows belonged to appellant. The police drove the truck and trailer to the Colt's Neck Station and later that day the cows were removed from appellant's trailer and taken to Rutgers' University beef farm.

On October 9, 1979, Hartman produced the certificates of registration for the cows which had been missing since October 6, 1979.

With respect to appellant's sufficiency claim, we must remember the following guidelines:

In order to convict appellant of theft by unlawful taking or disposition, the prosecution must prove beyond a reasonable doubt that he unlawfully took, or exercised unlawful control over, movable property of another with intent to deprive the owner thereof. 18 Pa.C.S.A. § 3921.

Additionally, we have said that:

Evidence of possession of stolen property may be relevant in deciding whether the possessor is the one who stole it. However, evidence of possession alone is not sufficient to prove theft beyond a reasonable doubt. *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974). All of the evidence of surrounding circumstances must be considered, and although a conviction may be based on circumstantial evidence alone, it must meet the standard of proof beyond a reasonable doubt. *Commonwealth v. Simmons,* 233 Pa.Super. 547, 336 A.2d 624 (1975).

*Commonwealth v. Bailey,* 250 Pa.Super. 402, 407, 378 A.2d 998, 1001 (1977).

We also have said that the following factors will be applied when examining whether the finder of fact can infer *246 guilt from the unexplained possession of recently stolen goods:

the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels.

*Commonwealth v. Dale,* 232 Pa.Super. 213, 221, 335 A.2d 454, 458 (1975), petition for allowance for appeal denied May 5, 1975.

In this case, appellant contends that the evidence of guilt is insufficient because of the following:

[all] that is established is the Defendant's possession of the allegedly stolen property in a neighboring state with a truck and a trailer along with some circumstantial evidence that the cows left the Hartman farm in a truck and trailer. No exact time frame was ever established for the actual theft nor was any identification made regarding any truck or trailer, and therefore it is impossible to say the Defendant's possession was even close in the context of time to the disappearance of the cattle from the Hartman farm.

Brief for Appellant at 15.

**871 [1] Our review of the record reveals that appellant's contentions must be rejected. To begin with, appellant possessed four unique items of movable stolen property (i.e., four black and white Holstein dairy cows) when appellant was stopped by the police. Because these were pedigreed animals, they were marked distinctly on the ears and around the neck with registration numbers. Also,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

509 A.2d 868
353 Pa.Super. 241, 509 A.2d 868
(Cite as: 353 Pa.Super. 241, 509 A.2d 868)

Page 4

documents were issued to the owner/s in order to verify their unique value.

Although the record fails to contain evidence of the exact time of the theft, the record does establish that the theft must have occurred between 8:00 p.m., on October 5, 1979, and 6:00 a.m. on October 6, 1979. These were the times when the owner had conducted his routine check of the *247 cows. The owner also stated that "things appeared normal" during his midnight check although he did not take a head count. Trial Testimony at 45.

Due to the very limited use for which the dairy cows could be used and because of their cumbersome nature, we have no difficulty in concluding that appellant's possession of these items in the neighboring state of New Jersey was recent. *See Commonwealth v. Plath,* 267 Pa.Super. 1, 4, 405 A.2d 1273, 1275 (1979) (possession of stolen automobile by defendant was recent six or seven hours after the theft had occurred as this was an insufficient time period "for the automobile to have been assimilated into the ordinary market channels for automobiles."); *Commonwealth v. Phillips,* 258 Pa.Super. 109, 392 A.2d 708 (1978) (possession of stolen motor vehicle was considered recent one week after the theft).

The evidence also establishes that appellant gave an unsatisfactory explanation for his possession of the cows. Upon being questioned by the police, appellant stated that the cows belonged to him although appellant was unable to produce any documentation of his ownership.

Under these circumstances, appellant's conduct at the time of his arrest " 'is totally inconsistent with innocent behavior and merely adds weight to the [factfinder's] conclusion that appellant knew the vehicle was stolen.' " *Commonwealth v. Plath,* 267 Pa.Super. at 4, 405 A.2d at 1274 (quoting *Commonwealth v. Murray,* 246 Pa.Super. 422, 428-30, 371 A.2d 910, 913 (1978)). We also note that the record establishes that a truck was used in order to transport the stolen items. Accordingly, this web of evidence was sufficient to establish beyond a reasonable doubt that a theft had occurred and that appellant had committed this theft.

For the most part, the trial court's opinion sufficiently disposes of the other issues. We need only comment on three issues which appellant has raised.

*248 [2] Appellant contends that trial counsel was ineffective for failing to present certain defense witnesses. An evidentiary hearing was held on counsel's ineffectiveness and trial counsel denied that appellant gave him the names of certain witnesses who could testify that they had sold appellant the cows.

[3] With respect to the sentencing question, the trial court imposed a sentence of not less than three (3) nor more than seven (7) years which was to run consecutively to the sentence of ten (10) to twenty (20) years imposed in Bucks County. According to appellant, the trial court should have given him credit for the time which he had served in Berks County although appellant was serving a federal sentence while he was on loan to the authorities in Pennsylvania. The other prior adult convictions were as follows:

(a) a sentence of three (3) to five (5) years imprisonment in New Jersey for possessing stolen property, receiving stolen property and uttering a forged license (1972);

(b) five (5) years imprisonment for interstate transportation of a motor vehicle and criminal conspiracy (1970);

(c) one (1) year imprisonment in the federal penitentiary for possessing interstate **872 cattle and the sale of interstate cattle (1979);

(d) five (5) years imprisonment for a federal probation violation;

(e) three and one-half (3 1/2) to seven (7) years imprisonment for escape (1980); and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

509 A.2d 868
353 Pa.Super. 241, 509 A.2d 868
**(Cite as: 353 Pa.Super. 241, 509 A.2d 868)**

Page 5

(f) ten (10) to twenty (20) years imprisonment for armed bank robbery and escape (1981).

Because of appellant's lengthy record and because appellant was serving a federal sentence and a state sentence while awaiting trial in Berks County, appellant was not entitled to credit for time served. See 19 P.S. § 898 (defendant entitled to credit for days spent in custody "on this offense".) Also, we are unable to conclude that the trial court abused its discretion in imposing a sentence of not less than three *249 (3) nor more than seven (7) years in prison in view of appellant's lengthy record.

[4] We also must reject appellant's claim that the charges against appellant should be dismissed pursuant to Article IV of the Interstate Agreement on Detainers Act. Act of July 9, 1976, P.L. 586, No. 142 § 2 (1978), 42 Pa.C.S.A. § 9101 et seq. According to appellant, the charges should be dismissed because appellant was returned to federal custody before a retrial. The record shows that appellant was granted a new trial because appellant had not waived his right to representation by counsel in a voluntary and intelligent manner.

When prosecuting authorities in a jurisdiction in which charges are pending against a prisoner obtain temporary custody of the prisoner as the result of lodging a detainer and making a request, Article IV(e) requires a dismissal of the charges if the prisoner is returned to the original place of imprisonment without being tried.[FN2] *Id.* In this case, appellant had been tried once; however, after appellant had been transferred back to the federal authorities pursuant to a writ of habeas corpus, appellant received a new trial.

FN2. The pertinent statute provides:

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

42 Pa.C.S.A. § 9101, Article IV(e).

Because appellant was commanded to appear in federal court, the "state officials are powerless to refuse to comply with the writ." *Commonwealth v. Lloyd,* 341 Pa.Super. 107, 114, 491 A.2d 173, 176 (1985). Accordingly, we also must reject appellant's second attempt to secure relief under this Act. *Id.*

Judgment of sentence is affirmed.

MONTEMURO, J., concurs in the result.
Pa.Super.,1986.
Com. v. Lloyd
353 Pa.Super. 241, 509 A.2d 868

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

http://web2.westlaw.com/print/printstream.aspx?sv=Split&prft=HTMLE&fn=_top&mt=W...   8/31/2010

Westlaw

903 A.2d 106
(Cite as: 903 A.2d 106)

Page 1

Commonwealth Court of Pennsylvania.
Luke OAKMAN, Petitioner
v.
DEPARTMENT OF CORRECTIONS, Marilyn S. Brooks, Superintendent, Gill, Records Room Supervisor of the State Correctional Institute at Albion, Pennsylvania, and Robert J. Durison, Director of CMR/PPS, Respondents.
Submitted on Briefs June 23, 2006.
Decided July 19, 2006.

**Background:** Inmate filed petition for review in the nature of mandamus, directing Department of Corrections to give him credit for time served.

**Holding:** The Commonwealth Court, No. 346 M.D. 2005,Pellegrini, J., held that Department was required to carry out trial court's order to give inmate credit for time served.
Petition for summary relief granted.

West Headnotes

**Constitutional Law 92 2623**

92 Constitutional Law
 92XX Separation of Powers
  92XX(D) Executive Powers and Functions
   92k2622 Encroachment on Judiciary
    92k2623 k. In General. Most Cited Cases
 (Formerly 92k79)

**Prisons 310 245(3)**

310 Prisons
 310II Prisoners and Inmates
  310II(F) Duration of Confinement
   310k243 Good Conduct or Other Earned Credits Against Sentence
    310k245 Right to Credits; Eligibility and Entitlement
     310k245(3) k. Particular Issues and Applications. Most Cited Cases
 (Formerly 310k9)

Department of Corrections was required to carry out trial court's order to give inmate credit for time served, despite Department's contention that attempting to obtain sentencing information from judges or clerical staff was extremely burdensome; Department was an administrative agency bound to follow the trial court's and Commonwealth Court's orders, and there was no dispute that the trial court clearly stated that inmate was entitled to credit for time served.

*106 Luke Oakman, petitioner, pro se.

Timothy A. Holmes, Asst. Counsel and Michael A. Farnan, Chief Counsel, Camp Hill, for respondents.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a *pro se* petition for review in the nature of mandamus filed in *107 our original jurisdiction by inmate Luke Oakman (Oakman) requesting this Court to order the Department of Corrections (Department) to credit him for time served on his original split sentence.

This matter was previously before the Court when Oakman filed his *pro se* petition to which the Department filed preliminary objections. To briefly recap the facts in that matter, Oakman was and still remains incarcerated in the State Correctional Institution at Albion (SCI-Albion) for a 1984 burglary he committed while on bail for another crime. Burglary is a felony of the first degree with a statutory maximum of 20 years. 18 Pa.C.S. § 1103. He pled guilty to the burglary charge and received a split sentence of one to two years of imprisonment followed by three years of probation. After serving the imprisonment portion of his split sentence between December 30, 1984, and January 7, 1987,

EXH.   2

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

903 A.2d 106
(Cite as: 903 A.2d 106)

Page 2

he began serving the three-year probationary period. While on probation, he was arrested and convicted for robbery in violation of his probation for his crime of burglary. He was sentenced to two concurrent terms of four to 10 years for robbery with another two-month sentence for contempt of court to run consecutively. His three-year probationary period for the burglary crime was revoked on October 5, 1990, and he was re-sentenced on that crime (VOP sentence) to three and one-half years to seven years of incarceration with credit from December 30, 1984, to January 7, 1987, the time he served on the split sentence.

On June 11, 1993, the Department calculated Oakman's total sentence for all the offenses for which he owed time to be seven years, eight months to 17 years, with a maximum release date of May 16, 2005. This release date was calculated based on its reading of the VOP sentencing order that he was to be given credit for time served between December 30, 1984, and January 7, 1987, on the split sentence. However, on July 10, 2002, Robert J. Durison, in his capacity as Director of Classification, Movement & Registration of the Philadelphia Prison System, informed the Department that Oakman's credit of December 30, 1984, to January 7, 1987, was awarded to him in error and should be removed from his sentence. As a result, the Department, acting through Gill in her capacity as the record supervisor at SCI-Albion, removed the credit and changed Oakman's maximum release date from May 16, 2005, to November 19, 2006.

Oakman filed a Petition for Writ of Habeas Corpus and/or Mandamus in this Court's original jurisdiction alleging that the trial court had given him credit for the period between December 30, 1984, to January 7, 1987, when he was re-sentenced, and that the modification of his VOP sentence years after the sentence was issued to him without a hearing in violation of his due process rights, constituted double jeopardy and was illegal under 42 Pa.C.S. § 5505 [FN1] because it was issued more than 30 days after the trial court's original order.

The Department filed preliminary objections in the nature of a demurrer contending that Oakman had not made out a claim upon which relief could be granted arguing that under *McCray v. Department of Corrections,* 582 Pa. 440, 872 A.2d 1127 (2005), and *Aviles v. Department of Corrections,* 875 A.2d 1209 (Pa.Cmwlth.2005), regardless of what the trial court had ordered, there could be no credit for time *108 served unless the VOP sentence exceeded the 20-year statutory maximum for the crime of burglary which his sentence did not.

> FN1. 42 Pa.C.S. § 5505 provides: "Except as otherwise provided or proscribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."

Relying on *Black v. Department of Corrections,* 889 A.2d 672 (Pa.Cmwlth.2005), we dismissed the Department's preliminary objections,[FN2] concluding that both *McCray* and *Aviles* did not hold that mandamus was unavailable if the VOP sentence did not exceed the statutory maximum, but only held that mandamus was unavailable where the order in question did not clearly provide that credit was to be given:

> FN2. *Oakman v. Department of Corrections, et al,* 893 A.2d 834 (Pa.Cmwlth.2006).

Regarding *McCray,* we stated that it only held that where a VOP sentence does not award credit or the award of credit is ambiguous, the defendant is required to express his concerns about this matter by raising an objection to the sentencing court to clarify its sentence, not seek mandamus. Regarding Aviles, we stated that it only held that the trial court was presumed to have taken into consideration any time served prior to a violation of probation in the determination of the VOP sentence, and if the sentencing court wants to give

Page 3

903 A.2d 106
(Cite as: 903 A.2d 106)

credit and does so, it must say so clearly. Finally, in *Black,* we went on to note that this was in accord with *Commonwealth v. Yakell,* 876 A.2d 1040 (Pa.Super.2005), where our Superior Court stated that because an award for credit for time served against the VOP sentence was discretionary, "[i]n the future, in order to prevent confusion such as happened in this matter, the trial court, when resentencing after revocation of parole or probation, should state on the record whether or not the new sentence is inclusive of the original sentence and formulate and furnish the new sentence accordingly." *Id.* at 1044.

*Oakman,* 893 A.2d at 837. We then went on to hold that where a sentencing court clearly gives credit against the VOP sentence for time served on the original split sentence, mandamus would lie to compel the Department to carry the trial court's sentencing order.

Because Oakman had pled in his petition that the trial court gave him credit against his VOP sentence for the time served on his original split sentence from December 30, 1984, to January 7, 1987, and because he alleged that the trial court's VOP sentencing order provided that he was to receive credit for time served, we concluded that mandamus could be maintained to have the Department comply with the clear instructions of the trial court and dismissed the Department's preliminary objection. Alleging that the trial court explicitly ordered that he receive time served on his original split sentence, Oakman filed a petition for summary relief requesting that mandamus be issued directing the Department to give him credit for time served between December 30, 1984, to January 7, 1987, as previously ordered by the trial court.

The Department does not dispute that the trial court's order clearly gave Oakman credit for the period in question and, in fact, admits the order provides *he should receive the credit.* Nonetheless, the Department boldly argues that Oakman does not have a clear right to mandamus because that right was negated when Durison, acting as the Director of Classification, Movement & Registration of the Philadelphia Prison System, decided that the sentencing judge incorrectly gave him credit for time serve because he provides sentencing information and has "the same force and effect as if coming from a judge." We beg to differ.

*109 Contrary to the Department's misguided belief, judges can change an order and only appellate courts-not administrative officials-may reverse an order of a trial court.[FN3] The Department, however, argues that if it is forced to rely on the trial court's orders, life will become an administrative nightmare. "Attempting to obtain sentencing information from other sources in Philadelphia such as sentencing judges or clerical staff is extremely burdensome." (Department's brief at 12-13.) Therefore, only the Director should be responsible for making decisions as to whether the sentencing order is correct. The Department continues to explain that: "[c]hanging procedures now could be an overwhelming task to both Philadelphia County and Department of Corrections employees. Such a change would require the Department's records staff to speak to numerous people (some of whom would be judges), assimilate all of the information, present it to all of the people involved, and get them all to agree on the correct sentence. All the while, attempting to do this with information that the Department does not possess and with information that could be over twenty years old, like Mr. Oakman's. Closing Pandora's box and putting all of the world's woes back in it would be more simple." (Department's brief at 13.) Its claims of administrative woe are of its own making because all its concerns are alleviated by simply doing what it is required to do-carry out the terms of the order. *McCray v. Pennsylvania Department of Corrections,* 582 Pa. 440, 872 A.2d 1127, 1133 (Pa.2005). ("The Department is an executive branch agency that is charged with faithfully implementing sentences imposed by the courts. As part of the executive branch, the Department lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions.")

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

903 A.2d 106
(Cite as: 903 A.2d 106)

Page 4

FN3. Although the Department relies on *Abraham v. Department of Corrections,* 150 Pa.Cmwlth. 81, 615 A.2d 814 (1992), *overturned on other grounds by Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898 (1996), for the proposition that this Court may not question the propriety or corrections of a prison commitment form for purposes of sentencing, that case is inapplicable to this matter as *Abraham* deals only with the boilerplate language on a form regarding the place of incarceration and whether it is necessary for the form to be signed by a judge, not the sentence itself. That case does not support a conclusion that the Director of a corrections facility has the legal authority to overturn a trial court's order on sentencing.

Because the Department is an administrative agency bound to follow the trial court's order and this Court's order as well, and there is no dispute that the trial court clearly stated that Oakman was entitled to credit for time served from December 30, 1984, to January 7, 1987, the Board is ordered to credit Oakman for that time served.

Accordingly, Oakman's petition for summary relief is granted.

## ORDER

AND NOW, this 19th day of July, 2006, the petition for summary relief filed by Luke Oakman is granted. The Department of Corrections is ordered to credit Luke Oakman's sentence for time served from December 30, 1984, to January 7, 1987.

Pa.Cmwlth.,2006.
Oakman v. Department of Corrections
903 A.2d 106

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

JEFFREY A. BEARD, Ph.D.
Secretary

JOHN KERESTES
Superintendent

ROBERT COLLINS
Deputy Superintendent
for Facilities Management

BRENDA TRITT
Deputy Superintendent
for Centralized Services

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
STATE CORRECTIONAL INSTITUTION AT MAHANOY
301 MOREA ROAD
FRACKVILLE, PENNSYLVANIA 17932
570-773-2158
FAX (570) 773-4043

April 21, 2008

The Honorable Lisette Shirdan-Harris
Court of Common Pleas of Philadelphia County
Criminal Justice Center, Suite 1217
1301 Filbert Street
Philadelphia, PA 19107

Re: *Commonwealth v. Michael A. Reynolds* PP# 672827  GV2582
No. MC0485/2006

Your Honor:

On September 12, 2006 your Honor sentenced the above Defendant to 1 year to 2 years confinement in the Department of Corrections. The DC300B Court Commitment Form the Department received directed that the Defendant receive credit for the period of 2/6/2006 to 9/12/2006. On December 6, 2006, the Department received a letter from Robert Durison, Director of Classification, Movement and Registration for the Philadelphia Prison System indicating that the Defendant should not receive any credit on this case. A copy of Mr. Durison's memo is attached for your Honor's convenience.

In *Oakman v. Department of Corrections, Robert J. Durison, et al.*, LEXIS 390, June 2006 (a copy of which is attached), the Commonwealth Court of Pennsylvania determined that credit was controlled by the trial court's order rather than a prison credit letter. Accordingly, the Department calculated Defendant's sentence with credit as set forth in the DC300B Court Commitment Form. The Department is requesting your Honor's direction whether to apply the credit as set for in Mr. Durison's letter to the Defendant's sentence.

Thank you for your assistance in this regard.

Respectfully submitted,

Don F. Young
Records Supervisor

C: Assistant District Attorney
David Baburiak, Esq
DC-15

EXH. 3

JEFFREY A. BEARD, Ph.D.  
Secretary

JOHN KERESTES  
Superintendent

ROBERT COLLINS  
Deputy Superintendent  
for Facilities Management

BRENDA TRITT  
Deputy Superintendent  
for Centralized Services

COMMONWEALTH OF PENNSYLVANIA  
DEPARTMENT OF CORRECTIONS  
STATE CORRECTIONAL INSTITUTION AT MAHANOY  
301 MOREA ROAD  
FRACKVILLE, PENNSYLVANIA 17932  
570-773-2158  
FAX (570) 773-4043

April 21, 2008

The Honorable Lisette Shirdan-Harris  
Court Common Pleas of Philadelphia County  
Criminal Justice Center, Suite 1217  
1301 Filbert Street  
Philadelphia, PA 19107

Re: Commonwealth v. Michael A. Reynolds PP#672827 GV2582  
No. MC0485/2006

Your Honor:

On September 12, 2006, your Honor sentenced the above Defendant to 1 year to 2 years confinement in the Department of Corrections on case MC0485/2006. The sentencing Order awarded the Defendant credit from 02/08/2006 to 09/12/2006. Information available to the Department indicates that the Defendant previously was sentenced in Montgomery County on July 11, 2006 to 6 months to 1 year and received credit for time spent in Montgomery County Prosion from February 6, 2006 to July 11, 2006 at CP5353/2003.

Eligibility for pre-commitment credit is controlled by 42 Pa. C.S. 9760. This statute allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is impose." Once an individual has been sentenced by a Pennsylvania Court, he or she is no longer in custody as a result of a criminal charge or charges for any other offense. After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time has ended. Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. A sentenced prisoner is not entitled to receive a duplicate credit for this same period of time on a separate sentence subsequently imposed for another offense. Commonwealth v. Lloyd, 353 Pa. Supr. 241, 509 A.2d 868 (1986).

Nevertheless, the Department has calculated the Defendant's sentence with credit as directed in your Honor's Order. Application of this duplicate credit, however, will result in the Defendant being eligible for parole or release prematurely. If it was Your Honor's intention that

EXH. 4

Re: Commonwealth v. Michael A. Reynolds PP#672827 GV2582
No. MC0485/2006
April 21, 2008
Page 2

this inmate should become eligible for parole or be released earlier than he would be without the benefit of this credit, you need take no action. If, however, you do not wish the Defendant to receive what the Department believes is inappropriate credit, the Department will remove the credit upon receipt of an appropriate order.

Thank you for your assistance in this regard.

Respectfully Submitted,

Don F. Young
Records Supervisor

C: Assistant District Attorney
David Baburiak, Esq.
DC-15

DC-ADM 804, Inmate Grievance System

Attachment B

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. 223095

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| REYNOLDS, Michael  GV2582 | SCI Mahanoy | D-A  18 | 3/23/2008 |

The following is a summary of my findings regarding your grievance:

This is in response to Grievance Number: 223095

Mr. Reynolds:

I have reviewed your sentence computation. The period of credit that you are questioning was not applied due to it being duplicate credit since you were under sentence in Montgomery County when you were sentenced on MC0485/0206.

In July 2006 you were sentenced in Montgomery County on a separate case and received credit from February 6, 2006 to date of sentence on July 11, 2006 on Montgomery County case CP05353/2000. Therefore, you would not be entitled to pre-commitment credit on your Philadelphia County case MC0485/0206 in which you were sentenced on September 12, 2006 in Philadelphia County. This credit was originally removed based on documentation received from Mr. Robert Durison, Director of Classification and Movement, Philadelphia County Prison.

Eligibility for pre-commitment credit is controlled by 42 Pa. C.S. 9760. This statute allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed." Once an individual has been sentenced by a Pennsylvania Court, he or she is no longer in custody as a result of a criminal charge or charges for any other offense. After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time has ended. Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. A sentenced prisoner is not entitled to receive a duplicate credit for this same period of time on a separate sentence subsequently imposed for another offense. Commonwealth v. Lloyd, 353 Pa. Supr. 241, 509 A.2d 868 (1986).

I have sent correspondence to Judge Lisette Shirdan-Harris (sentencing Judge on MC0485/0206) regarding the credit issue on this case, I mailed a copy to your defense attorney for that case. Once I receive notification back from Judge Shirdan-Harris as to her intent in regards to the duplicate credit, any appropriate changes will be made at that time.

This grievance is denied.

cc: Ms. Mason
DC-15 Inmate Records
DC-14
File

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| D. Young, Records Supervisor | *(signature)* | 4/23/08 |

EXH. 5