IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL REYNOLDS, | : |
| Plaintiff | : No. CV-09-2072 |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, et al. | : |
| Defendants | : |
| | : (Electronically Filed) |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JDUGMENT

### STATEMENT OF THE CASE

**Nature of the Case and Parties**

This civil rights action by a former State prisoner arises from confusion over his eligibility for pre-commitment credits applicable to his sentence.

Plaintiff is Michael Reynolds who resides in Willow Grove, Pennsylvania. Defendants are the Pennsylvania Department of Corrections; the State Correctional Institution at Mahanoy("SCI-Mahanoy"); Jeffrey Beard, former Secretary of the Department; John Kerestes, Superintendent at SCI-Mahanoy; and Don Young, a Corrections Employment and Vocational Coordinator.

The complaint is said to arise under the Eighth and Fourteeenth

Amendments and is brought pursuant to § 1983. The complaint alleges that the Defendants caused Reynolds to be confined beyond his maximum sentence. The complaint seeks damages. A jury trial has been requested.

**Relevant Procedural History**

A summary judgment motion has been filed on behalf of the defendants. This is their supporting brief.

**Facts**

In March of 2006, Defendant Don Young received Grievance # 223095 from Mr. Reynolds in which he complained that he was being confined beyond his maximum sentence. Young Declaration, ¶ 4. Young reviewed the Department's records and discovered what had occurred. *Id.,* at ¶ 5.

The Department's records show the following: On May 11, 2006, Reynolds was found guilty of contempt of court and terroristic threats at MC0485/2006 in Philadelphia. Young Declaration, ¶ 6. On July 1, 2006, Mr. Reynolds was sentenced by the Court of Common Pleas of Montgomery Count at CP5353/2003 to a term of six months to one year on different criminal charges. *Id.,* at ¶ 7.

Reynolds received credit for time spent in the Montgomery County Prison on the charges at CP5353/2003 from February 6, 2006 to July 11, 2006. Young Declaration, ¶ 8.

On September 12, 2006, Mr. Reynolds was sentenced by the Court of Common Pleas of Philadelphia County at MC0485/2006 to a term of one year to two years for contempt of court and terroristic threats. Young Declaration, ¶ 9.

The Commitment Form related to the sentence at MC0485/2006 stated that Mr. Reynolds was to be given pre-commitment credit for the period of February 6, 2006 to September 12, 2006. Young Declaration, ¶ 10. Reynolds' initial Sentence Status Summary showed his maximum release date on MC0485/2006 as February 8, 2008. *Id.* at ¶ 11.

Later in 2006, Robert Durison, Philadelphia County Prison's Director of Classification, wrote to the Department of Corrections informing DOC staff that Mr. Reynolds was not entitled to receive pre-commitment credit on the sentence at MC0485/2006 because he was in custody as a result of the criminal charges for which he was sentenced by Montgomery County. Young Declaration, ¶ 12. A later Sentence Status Summary computed Reynolds' maximum release date on MC0485/2006 as May 9, 2008. *Id.* at ¶ 13.

Eligibility for pre-commitment credit is controlled by 42 Pa.C.S. § 9760 which allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed." Young Declaration, ¶ 14.

3

Pennsylvania courts have held that once an individual has been sentenced by a Pennsylvania Court, he is no longer in custody as a result of a criminal charge or charges for any other offense. *Id.* at ¶ 15. After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time is ended. *Id.* at ¶ 16. Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. *Id.* at ¶ 17. A sentenced prisoner is not entitled to receive a duplicate credit for this same time period on a separate sentence subsequently imposed for another offense. *Id.* at ¶ 18. Based upon *Lloyd*, affording Mr. Reynolds credit on both sentences would result in his receiving duplicate credit. *Id.* at ¶ 19.

Following *Lloyd*, the Commonwealth Court of Pennsylvania in *Oakman v. Department of Corrections et al.* held that pre-commitment credit is controlled by the trial court's order rather than by a prison credit letter. Young Declaration, ¶ 20. The directions given in *Lloyd* and in *Oakman* resulted in conflicting results with respect to the calculation of pre-commitment credit for Mr. Reynolds. *Id.* at ¶ 21.

To obtain information as to what the Philadelphia Judge intended with respect to MC0485/2006, on April 21, 2008, Defendant Young wrote two letters to Judge Shirdan-Harris who had sentenced Reynolds. Young Declaration, ¶ 22.

Young responded to Reynolds in writing on his Grievance #223095 explaining what he had learned and informing Reynolds that he had written to Judge Shirdan-Harris for guidance. *Id.* at ¶ 23.

In June, 2008, Young received correspondence from Judge Shirdan-Harris stating that she wanted the credit she had given Reynolds applied to his sentence at MC0485/2006. Young Declaration, ¶ 24. Applying the credit meant that Reynolds was immediately eligible for release. *Id.* at ¶ 25. Young promptly took the steps necessary to have Reynolds released and he was released on June 10, 2008. *Id.* at ¶ 26.

Neither Young nor any of the other officials or employees employed by the Department of Corrections have authority to release prisoners based solely upon their requests or demands. Young Declaration, ¶ 27. Neither Secretary Beard nor Superintendent Kerestes had involvement in computing Reynolds' sentences. *Id.* at ¶ 28.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether Reynolds' claims against the Department of Corrections are barred by the Eleventh Amendment?

2. Whether the Department of Corrections is a "person" and so is not amenable to suit pursuant to § 1983?

3.   Whether Defendant Beard is entitled to summary judgment in that he had no personal involvement in unlawful conduct?

4.   Whether Defendants Kerestes and Young are entitled to summary judgment on Reynolds' Eighth Amendment claims in that they were not deliberately indifferent to his sentence problems?

## ARGUMENT

**Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law." Fed R.Ci.P. 56©. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 197(3d Cir.), *cert. denied,* 115 S.Ct. 590(1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 322, 329(1986). All doubts as to the existence of a genuine issue of material fact must be resolved

6

against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 863 F.2d 56, 59(3d Cir. 1988). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256-57. The affirmative evidence must consist of verified or documented materials. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657(3d Cir. 1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Application of these principles to this case requires the entry of summary judgment in favor of the Defendants.

### I. REYNOLDS' CLAIMS AGAINST THE DOC ARE BARRED BY THE ELEVENTH AMENDMENT.

The Eleventh Amendment provides that:

> The Judicial power of the United State shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

7

U.S. CONST., Amend. XI.

The United States Supreme Court has consistently interpreted the Eleventh Amendment to preclude suits against a state or its agencies in federal court, by citizens of that state or other states. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279 (1973); *Hans v. Louisiana,* 134 U.S. 1 (1890).

The Eleventh Amendment's jurisdictional bar is not dependent upon the nature of the relief requested. It is applicable to suits seeking money damages, *Edelman v. Jordan, supra*, as well as suits seeking equitable relief, *Alabama v. Pugh, supra,* 438 U.S. 781 (1978). Moreover, as noted by the Supreme Court in *Pennhurst,* the "constitutional bar applies to pendent claims as well." *Pennhurst supra* at 120.

And, while a state may consent to suit against it in federal court, thereby waiving its immunity, Pennsylvania has not done so either generally or in this case. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

In contravention of this long-established rule, Reynolds has named the Pennsylvania Department of Corrections("DOC") and SCI-Mahanoy as defendants

8

in this lawsuit. *See* Complaint, ¶¶ 8-9. Because the Eleventh Amendment bars suit against the states and their administrative agencies, and the DOC and SCI-Mahanoy are administrative units of the Commonwealth, Reynolds' claims against them must be dismissed with prejudice.

## II. THE DOC IS NOT A "PERSON" AND SO IS NOT AMENABLE TO SUIT PURSUANT TO § 1983.

Reynolds must fail in his attempt to impose liability upon the ("DOC")Department of Corrections and the State Correctional Institution at Mahanoy("SCI-Mahanoy") based upon § 1983. Section 1983 does not alone create any substantive rights. *Johnson v. City of Detroit,* 446 F.3d 614(6th Cir. 2006). It merely provides a mechanism for enforcing individual rights secured elsewhere, such as in the federal constitution or in other federal laws. *Id.* Moreover in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71(1989), the Supreme Court held that a state or one of its agencies is not amenable to suit pursuant to § 1983 because neither is a "person" within the statute's meaning. This holding forecloses Reynolds' claims against the DOC and SCI-Mahanoy.

Therefore, the Court should enter summary judgment in favor of the DOC and SCI-Mahanoy on any federal claims alleged against them in the complaint.

9

### III. DEFENDANT BEARD IS ENTITLED TO SUMMARY JUDGMENT BECASE HE HAD NO PERSONAL INVOLVEMENT IN UNLAWFUL CONDUCT.

Liability under § 1983 may only be based upon a state actor's involvement in conduct which violates a plaintiff's federally protected rights. *Hampton v. Holmesburg Prison Officials,* 546 F. 2d 1077, 1082 (3d Cir. 1976). To state a claim, the complaint must contain allegations that the defendant actually participated in or had actual knowledge of or acquiesced in actions proscribed by federal law which form the basis of the complaint. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Liability cannot be imposed on the basis of *respondeat superior* or the position of the state actor. *Parratt v. Taylor,* 451 U.S. 527, 537 n.3 (1981).

Reynolds' complaint does not satisfy the requirements as to Defendant Beard. The complaint includes no facts which show that Secretary Beard knew anything about Reynolds' plight or had a role in computing or applying credit to his sentences. From the absence of allegations in the complaint concerning Beard, it appears that Reynolds is attempting to impose liability upon Beard because of his position as head of the Department of Corrections. This he cannot do.

Absent facts that show that Beard had involvement in the computation of Reynolds' credits or had knowledge concerning his complaints about his sentence,

Reynolds has no claims against Beard cognizable under § 1983. Beard is therefore entitled to summary judgment in his favor.

### IV. DEFENDANTS KERESTES AND YOUNG ARE ENTITLED TO SUMMARY JUDGMENT ON REYNOLDS EIGHTH AMENDMENT CLAIMS BECAUSE THEY WERE NOT DELIBERATELY INDIFFERENT TO HIS SENTENCE PROBLEMS.

Reynolds alleges that the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by causing him to be imprisoned in excess of his maximum sentence. Defendants reject that characterization.

The Third Circuit has recognized that subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the Eighth Amendment's ban against cruel and unusual punishment. *Sample v. Diecks,* 885 F.2d 1099, 1108(3d Cir. 1989). However, proof that a prisoner was incarcerated beyond his lawful maximum sentence, by itself, is not enough to establish an Eighth Amendment violation. The *Sample* Court stated that "there can be no eighth amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendants to whether the plaintiff suffers an unjustified deprivation of his liberty." 885 F.3d at 1110. Specifically, the Court in *Sample* held that:

11

> to establish § 1983 liability for incarceration without justification, a plaintiff must demonstrate three elements. First a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being or would be inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.

*Id.*

Reynolds cannot make the requisite showing here. For one thing, Reynolds cannot show that Defendant Young knew about his problem until sometime in March of 2008. That is so because Defendant Young was not employed at SCI-Mahanoy where Reynolds was confined until March of 2008 and so was not in a position to communicate with Reynolds about his sentence. *See* Young Declaration, ¶¶ 1-4. Defendant Kerestes learned about Reynolds' problem for the first time in April, 2008 by way of Reynolds' appeal from his grievance. Kerestes Declaration, ¶ 2. Reynolds cannot show that defendant Beard knew anything about his sentence problem.

Nor can Reynolds show that Young or Kerestes, after learning of his sentence challenge, failed to resolve it. Indeed, the record shows that the opposite is true. After investigating the institutional records in response to Reynolds' grievance, Young wrote to Judge Shirdan-Harris, the sentencing judge from

Philadelphia whose credit was in dispute, and sought her guidance as to her intent. Young Declaration, ¶ 22. Upon receipt of the Judge's written confirmation that she intended Reynolds to have pre-commitment credit on the sentence she imposed, Young promptly took steps to have him released from SCI-Mahanoy. Young Declaration, ¶¶ 24, 26; Kerestes Declaration, ¶ 7. These actions do not constitute deliberate indifference on the part of Young and Kerestes even though Reynolds was incarcerated beyond his maximum sentence. If that were not so, Young and Kerestes would become sureties for the legal correctness of Reynolds' sentence and courts have held that that is not appropriate. *Whirl v. Kern,* 407 F.2d 781, 792(5th Cir. 1968).

Most important, neither Young nor Kerestes had involvement in computing or applying Reynolds' pre-commitment credits in the first place and neither one could have prevented Reynolds' delayed release. Reynolds' problems arose from the computation of Reynolds' pre-commitment credits by one Robert Durison, Philadelphia County's Prison Director of Classification back in 2006. Though Judge Shirdan-Harris indicated that Reynolds was to be given pre-commitment credit on charges at MC0485/2006, Durison informed staff at the DOC by way of a credit letter that Reynolds' was not entitled to that credit. *See* Young Declaration, ¶ 12. Durison's direction appears to have been informed by *his* interpretation of 42

Pa.C.S. § 9760 and the decision in *Commonwealth v. Lloyd*, 353 Pa. Super. 241(1986). Section 9760 controls eligibility for pre-commitment credits and allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed." *See* 42 Pa.C.S. § 9760.

The Superior Court of Pennsylvania held that once an individual has been sentenced by a Pennsylvania Court, he is no longer in custody as a result of a criminal charge or charges for any other offense. *Commonwealth v. Lloyd,* 353 Pa. Super. 241, 509 A.2d 868(1986). After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time is ended. *Id.* Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. *Id.* A sentenced prisoner is not entitled to receive a duplicate credit for this same time period on a separate sentence subsequently imposed for another offense. *Id.*

Because Reynolds was in custody on a sentence imposed by the Montgomery County Court when he was sentenced on charges at MC0485/2006 in Philadelphia and had received pre-commitment credit on that sentence, relying upon *Commonwealth v. Lloyd*, Durison apparently concluded that Reynolds was not eligible to receive pre-commitment credit on Shirdan-Harris' sentence because

14

it would have resulted in him receiving "duplicate credit." Young Declaration, ¶¶15-19.

However, the Pennyslvania Commonwealth Court in *Oakman v. Department of Corrections,* held that pre-commitment credit is controlled by the trial court's order and not by a prison credit letter. *See Id.,* 903 A.2d at 109. That meant that a prisoner could receive duplicate pre-commitment credits if a sentencing judge intended him to receive them. Thus, based upon *Oakman,* Reynolds could be released on May 9, 2008 only if Judge Shirdan-Harris stated that it was her intent for him to receive "duplicate" pre-commitment credits. The DOC did not learn of Judge Shirdan-Harris' intention until after May 9, 2008, which was Reynolds' maximum sentence as a result of application of the duplicate pre-commitment credit. Young Declaration, ¶¶ 24-25.

While it was unfortunate that Reynolds remained confined after expiration of his maximum sentence, that confinement was not the result of culpable conduct on the part of the defendants. The Court should grant defendants' summary judgment motion.

## CONCLUSION

For all the foregoing reasons, Defendants ask the Court to grant their summary judgment motion.

                                Respectfully submitted,

                                **THOMAS W. CORBETT, JR.**
                                **Attorney General**

                       By:   *s/Gwendolyn T. Mosley*

**Office of Attorney General**      **GWENDOLYN T. MOSLEY**
**Civil Litigation**                   **Senior Deputy Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-1180 – Phone (Direct)**   **SUSAN J. FORNEY**
**(717) 772-4526 – Fax**            **Chief Deputy Attorney General**
**Date: September 3, 2010**         **Chief, Litigation Section**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL REYNOLDS, | : |
| **Plaintiff** | : |
| | : No. CV-09-2072 |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, et al. | : |
| **Defendants** | : |
| | : **(Electronically Filed)** |

## CERTIFICATE OF SERVICE

I, GWENDOLYN T. MOSLEY, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on September 3, 2010, I caused to be served a true and correct copy of the foregoing Defendants' Brief in Support of Their Motion for Summary Judgment by electronic filing upon the following individuals:

Matthew B. Weisberg, Esquire
Rebecca Steiger, Esquire
PROCHNIAK & WEISBERG P.C.
7 S. Morton Avenue
Morton, PA 19070
mweisberg@ppwlaw.com
rsteiger@ppwlaw.com

<i>s/Gwendolyn T. Mosley</i><br>
<b>GWENDOLYN T. MOSLEY</b><br>
<b>Senior Deputy Attorney General</b>