# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL REYNOLDS, <br> Plaintiff | No. 3:09cv2072 <br><br> (Judge Munley) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS; STATE CORRECTIONAL INSTITUTE OF MAHONEY; JEFFREY A. BEARD, Ph.D, Individually and in his official capacity as Secretary of the Department of Corrections; JOHN KERESTES, Individually and in his official capacity of Superintendent; DON F. YOUNG, Individually and in his official capacity as records supervisor; and JOHN DOES 1-10, <br> Defendants | FILED <br> SCRANTON <br><br> DEC 1 0 2010 |

## MEMORANDUM

Before the court is defendants' motion for summary judgment. Having been fully briefed, the matter is ripe for disposition.

## Background

This matter concerns the sentence that plaintiff Michael Reynolds served in

the custody of the Defendant Pennsylvania Department of Corrections. Plaintiff contends that he suffered cruel and unusual punishment in violation of his rights under the Eighth Amendment of the United States Constitution when defendants improperly calculated his sentence, refused to release him, and held him for several months longer than his sentence required.

Plaintiff Michael Reynolds was released from custody at the Pennsylvania State Correctional Institution at Mahanoy ("SCI-Mahanoy") on June 10, 2008. (Defendants' Statement of Undisputed Facts (hereinafter "Defendants' Statement" at ¶ 1). On July 1, 2006, Reynolds received a sentence of six months to one year from the Court of Common Pleas of Montgomery County, Pennsylvania for a case designated CP5353/2003. (Id. at ¶ 2). Plaintiff received credit on his sentence in that case for time spent in the Montgomery County Prison from February 6, 2006 to July 11, 2006. (Id. at ¶ 3). On September 12, 2006, the Hon. Lisette Shirdan-Harris sentenced plaintiff to a term of one to two years in the Court of Common Pleas of Philadelphia County in case number MC0485/2006. (Id. at ¶ 4). The Commitment Form associated with this second case stated that plaintiff should be given per-commitment credit for his earlier incarceration in Montgomery County from February 6, 2006 to September 12, 2006. (Id. at ¶ 5).

Robert Durison, the Director of Classification for the Philadelphia County Prison wrote to the Department of Corrections shortly thereafter to inform them that plaintiff was not entitled to receive a pre-commitment credit on his sentence in case number MC0485/2006. (Id. at ¶ 6). Durison reasoned that eligibility for pre-

commitment credit was controlled by 42 Pa.C.S. § 9760. (Id. at ¶ 7). Under that provision, a prisoner receives credit "for all time spent in custody 'as a result of the criminal charge for which a prison sentence is imposed.'" (Id. (quoting 42 Pa.C.S. § 9760)). Further, Pennsylvania courts have found that once an individual is sentenced by a Pennsylvania court, he is not in custody as a result of criminal charges for any other offense. (Id. at ¶ 8 (citing Commonwealth v. Lloyd, 509 A.2d 868 (Pa. Super. Ct. 1986)). A prisoner kept in custody after sentencing but awaiting trial on another charge receives credit for the sentence he is serving. (Id. at ¶ 10). Prisoners may not receive duplicate credit for the time in custody on a sentence subsequently imposed for another offense. (Id. at ¶ 11). Officials therefore concluded that plaintiff should not receive credit on his sentence for case number MC0485/2006 for the months in spent in Montgomery County jail. (Id. at ¶ 12).

Plaintiff submitted a number of grievances and staff requests complaining that he was entitled to receive credit on his second sentence for time spent in Montgomery County. (Id. at ¶ 13; Plaintiff's Response to Defendants' Statement of Undisputed Facts (Doc. 40) (hereinafter "Plaintiff's Response") at ¶ 12). In 2006, the Commonwealth Court of Pennsylvania concluded that the trial judge, rather than the Department of Corrections, has authority to determine whether pre-commitment credit should apply in circumstances like plaintiff's. (Defendants' Statement at ¶ 14).

Among the requests filed by plaintiff regarding this issue was one that went to Defendant Superintendent John Kerestes on December 12, 2007. (See Exh. C to Plaintiff's Brief in Opposition (Doc. 40)). The response to that request came from a

3

staff member, who wrote that Judge Shindin-Harris had written the prison and explained that the credit did not apply to his case. (Id.). Plaintiff filed a grievance through the Department of Corrections system on March 23, 2008. (See Exh. F to Id.). Plaintiff complained that the prison's records room had not subtracted seven months of credit time from his twenty-four month sentence. (Id.). Defendant Donald Young reviewed this request and rejected plaintiff's claim on April 23, 2008. (Id.). He concluded that plaintiff was not eligible for credit for his time in county court because "[a] sentenced prisoner is not entitled to receive a duplicate credit for this same period of time on a separate sentence subsequently imposed for another offense." (Id.). Superintendent Kerestes wrote plaintiff on May 9, 2008 to inform him that he had rejected his appeal of Young's decision. (See Exh. G to Id.). Kerestes found Young's investigation and decision "appropriate." (Id.). At the same time, Kerestes noted that Young had written to Judge Shirdan-Harris about the issue, and promised to notify plaintiff "if there are any changes regarding this issue." (Id.).

Young wrote two letters to Judge Shirdan-Harris on April 21, 2008, seeking clarification on whether she had intended to have credit for time in Montgomery County custody apply to plaintiff's sentence. (Defendants' Statement at ¶ 17; Young Affidavit, Exh. to at ¶ 22). Judge Shirdan-Harris responded to Young's letter in June 2008. (Id. at ¶ 24). She informed Young that she had intended to provide credit for plaintiff's time in custody to the sentence she imposed. (Id.). Upon receiving this information, Young concluded that plaintiff was eligible for an immediate release. (Id. at ¶ 25). Young acted immediately, and plaintiff was released on June 10, 2008.

4

(Id. at ¶ 26).

Plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983 on August 3, 2009. (See Doc. 1). The complaint contains four courts. Count I alleges that agents of the Department of Corrections, including Defendants Young and Kerestes violated plaintiff's Fourteenth and Eighth Amendment rights by being recklessly indifferent to plaintiff's excessive confinement. Count II alleges that plaintiff's confinement beyond the time he was rightfully to serve constituted false imprisonment in violation of the United States Constitution. Count III alleges that the Defendant Department of Corrections, State Prison and Defendant Secretary of the Corrections Beard created a policy and practice that failed properly to train correctional officers and led to plaintiff's excessive confinement. Count IV is a claim of false imprisonment under Pennsylvania law.

Plaintiff originally filed this case in the United States District Court for the Eastern District of Pennsylvania. On October 14, 2009, that court transferred the case to this jurisdiction. (See Doc. 12). Defendants then answered the complaint, and the parties engaged in discovery. At the close of discovery, defendants filed the instant motion for summary judgment. The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings his claim pursuant to 42 U.S.C. § 1983. The court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v.

6

Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

As a preliminary matter, the court notes that all defendants sought summary judgment on all claims, raising various grounds. The plaintiff responded by moving "for the voluntary dismissal of all Defendants except Defendant Kerestes, in his individual capacity." (Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 40) at 1). Consequently, the court will grant the motion of all defendants except Defendant Kerestes as unopposed.

**Defendant Kerestes**

Defendant alleges John Kerestes, Superintendent of SCI-Mahonay, violated his right to be free of cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution. Defendant argues that he should be granted summary judgment on this claim because no evidence in the record indicates that Kerestes demonstrated deliberate indifference to his plight. To the contrary, once made aware of defendant's improper detention, Kerestes acted to resolve the issue, leading to plaintiff's release. Plaintiff responds that Kerestes was made aware of his potentially excessive detention long before May 2008 and did nothing to rectify the situation. Indeed, Kerestes allegedly had plaintiff placed in a restrictive housing unit in retaliation for raising these issues.

"[I]mprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989).

Still, "there can be no eighth amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty." Id. at 1110. To establish liability under Section 1983 for such a violation, a plaintiff must establish three elements: first "a plaintiff must . . . demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted." Id. Next, "the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight." Id. Third, "the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention." Id. A finding of deliberate indifference requires an inquiry into "the official's duties and the role he or she played in the everyday life of the prison." Id. "A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation brought to his attention when there are procedures in place calling for others to pursue the matter." Id. When an official knows, however, that, given her role in prison administration, "a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present." Id.

Moreover, "[d]eliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a

8

prisoner's claim of sentence miscalculation." Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993). In Moore, the plaintiff was held six months beyond his maximum term of incarceration on a parole violation due to confusion and a slow-moving investigation by the parole board. The investigation had been prompted by Moore's complaints to prison authorities and the parole board. Id. at 687. The district court found that "the parole board did not reject Moore's initial complaint outright, or suspend its search once it was begun," and concluded therefore that no evidence of deliberate indifference existed. Id. The Court of Appeals agreed, finding that "the undisputed facts show that the parole board officials were attempting to resolve the confusion over the sentencing and were taking affirmative steps during" their investigation "towards that end." Id. As such, the court concluded that "[w]e cannot say that this investigation was so inept or ineffectual that deliberate indifference on [sic] the part of the parole board officials may be inferred from the evidence here." Id.

Of import in this matter are two decisions from the Pennsylvania courts regarding calculation of sentences. In Commonwealth v. Lloyd, 509 A.2d 868 (Pa. Super. Ct. 1986), a prisoner sought credit on his sentence for time served awaiting trial. The prisoner was incarcerated on other charges in the months before sentencing. The court concluded that "because appellant was serving a federal sentence and a state sentence while awaiting trial in Berks County, appellant was not entitled to credit for time served." Id. 872. Thus, the plaintiff here normally would not be credited for time served on his second sentence if he were serving another

9

sentence while awaiting sentencing on the second matter. In <u>Oakman v. Dept. of Corrections</u>, 903 A.2d 106 (Pa. Commw. Ct. 200), however, the court determined that this general rule against duplicative credits could be altered by the sentencing judge, and that the Department of Corrections was required to implement such orders. <u>Id.</u> at 109 ("Because the Department is an administrative agency bound to follow the trial court's order and this Court's order as well, and there is no dispute that the trial court clearly stated that Oakman was entitled to credit for time served from December 30, 1984, to January 7, 1987, the Board is ordered to credit Oakman for that time served."). Thus, if the sentencing judge in plaintiff's second case determined that plaintiff should receive credit for his time in Montgomery County, the Department would be required to recognize that time and provide plaintiff an earlier release date.

In this case, the record reveals that plaintiff submitted a number of requests to prison officials regarding the appropriate length of his incarceration.[1] Plaintiff insisted that he was entitled to credit for time served in the Montgomery County Jail awaiting sentencing from Judge Shirdan-Harris and that the release date projected for him by the Department of Corrections overstated his maximum sentence. On

---

[1] As noted above, the record also contains two letters written by plaintiff to Judge Shirdan-Harris. The first, dated May 31, 2007, informed the Judge that he feared the prison "has disregarded the seven months [t]ime credit" he should have received in his case and asked the court "to have this matter addressed by notifying" him and prison of her position. (Exh. D to Plaintiff's Brief in Opposition (Doc. 40)). The second, dated June 9, 2008 informed the Judge of plaintiff's contention that he was entitled to credit for time served and asked for the Judge's assistance in convincing the prison to accept these claims. (Exh. F to Plaintiff's Brief (Doc. 40)).

August 7, 2007, plaintiff sent an inmate request to the Records Department Supervisor, complaining that he had "found a descrepancy [sic] of 7 months that was omitted from the commencement of sentence till my current time that I've served." (Exh. D to Plaintiff's Brief in Opposition (Doc. 40)). Plaintiff insisted that he should be released from prison on February 8, 2008. (Id.). He also offered to write to the sentencing judge if such information was necessary to correct the situation. (Id.). On August 7, 2007, a prison official responded that the record indicated credit had been issued on only one of the two cases for which plaintiff had been sentenced. (Id.). If plaintiff had concerns that the record was erroneous, he should contact his sentencing judge. (Id.). On December 10, 2007, plaintiff filed an inmate request directed to Defendant Kerestes. (Exh. D to Plaintiff's Brief in Opposition (Doc. 40)). Plaintiff insisted that he had been incarcerated for seven months before his sentencing, and should have received credit for those months. (Id.). A staff member responded for the superintendent, informing him that Judge Shinder-Harris had written the prison, ordering that the credit should be applied to only one of plaintiff's sentences.[2] (Id.).

Plaintiff's efforts to have the prison alter his release date intensified in March, 2008 as the February date on which he felt he should have been released came and went. He made a request to Ms. Mason, a corrections superintendent's assistant, on

---

[2] The letter, addressed to Cindy Gates, the records supervisor, states that "I am in agreement with Mr. Durison's credit letter which is attached hereto. As such the inmate should receive credit from July 1, 2005 to July 22, 2005 and May 11, 2006 to October 17, 2006. Kindly amend your records to reflect this credit." (Id.). The letter addresses only one criminal matter, No. CP2870-0507.

11

March 21, 2008, complaining that Judge Shirdan-Harris had miscalculated his sentence and that he had not been given proper credit for time served. (Id.). He insisted that he should have been released by February 8, 2008. (Id.). Mason replied that she was not a records specialist, and that plaintiff should contact Young, the new records supervisor. (Id.). On March 23, 2008, plaintiff filed a grievance, alleging that he had been held longer than his sentence allowed and that he should be immediately released. (Exh. D to Plaintiff's Brief in Opposition). Donald Young denied the grievance on April 23, 2008. (Exh. E to Plaintiff's Brief in Opposition). He informed plaintiff that, since he was serving his Montgomery County sentence at the time of his arrest on the charges that had landed him in state prison, he could not get credit for his time in custody awaiting sentencing. (Id.). Still, Young promised to write to Judge Shirdan-Harris for clarification of the issues in his case. (Id.). Young also wrote plaintiff's defense counsel on the Philadelphia charge. (Id.). Plaintiff appealed this grievance to Superintendent Kerestes on May 1, 2008. (Id.). Kerestes denied the appeal, concluding that Young had "properly researched your issues" and offered an "appropriate response." (Exh. E to Plaintiff's Brief (Doc. 40)). He noted that Young had contacted the sentencing judge and promised that plaintiff would be "appropriately notified if there are any changes regarding this issue." (Id.). Young's actions set in motion the events which, as explained above, led to plaintiff's release.

The only remaining claim here is against Defendant Kerestes. Plaintiff insists that Kerestes had knowledge of plaintiff's improperly calculated sentence and ignored his problems. Since Kerestes had "ultimate authority" over the situation and

plaintiff was not credited as the judge intended, Kerestes was deliberately indifferent to plaintiff's plight. The court disagrees.

The evidence here indicates that Kerestes was not the subject of frequent requests or grievances. Only two of the documents entered into the record were aimed specifically at Defendant Kerestes, and he reached a decision only on one of them. When Kerestes addressed plaintiff's complaint in a grievance appeal filed in May, 2008, Kerestes directed Young to initiate the investigation that eventually freed plaintiff. An assistant investigated plaintiff's earlier request for an adjustment to his sentence, concluding that the Judge had informed the prison that plaintiff was not to receive credit. When plaintiff eventually filed a grievance and the issue came before Kerestes, the evidence indicates that he examined the grievance appeal carefully and directed Young to contact Judge Shirdan-Harris. Information from Judge Shirdan-Harris led to plaintiff's release. Under Pennsylvania law, as explained above, the only person who could conclusively establish that plaintiff should be released was the sentencing judge. Kerestes involvement therefore helped free plaintiff from prison and end his improper incarceration. No evidence indicates that he acted to prolong that incarceration.

As such, no evidence indicates deliberate indifference from Kerestes. Even assuming Kerestes can be held responsible for his assistant's investigation, nothing in the record indicates that the assistant became aware of plaintiff's claim of an improper sentence calculation and did nothing to investigate the problem. The evidence demonstrates the contrary; the assistant examined plaintiff's record and

13

interpreted letters from the sentencing judge and prison officials to indicate that plaintiff was not entitled to the credits he claimed. Kerestes was not deliberately indifferent on the one occasion when he acted directly in the case. Informed of plaintiff's claims through his grievance, Kerestes again directed an investigation. That investigation freed plaintiff after the sentencing judge explained her intention to the prison. Under Sample, a showing of deliberate indifference must be made to establish an Eighth Amendment violation. No evidence in the record indicates deliberate indifferent from Defendant Kerestes, and the court must grant summary judgment on the plaintiff's remaining claim. See e.g., Montanez v. Thompson, 603 F.3d 243, 253-54 (3d Cir. 2010) (finding qualified immunity appropriate for prison official who handled prisoner's complaint of overlong incarceration because official quickly responded to prisoner's requests and complaints by contacting appropriate parties, including the sentencing judge and thus no evidence existed to demonstrate she "ignored [prisoner's] claims or even failed to follow established DOC policy during her" investigation).

The court recognizes the difficulty of this situation, where plaintiff was incarcerated for several months longer than he should have been. Under the standards articulated by the Court of Appeals, however, plaintiff cannot establish the deliberate indifference required for a reasonable juror to find that Defendant Kerestes violated his constitutional rights.

## Conclusion

For the reasons stated above, the court will grant the defendants' motion for

14

summary judgment. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL REYNOLDS,** <br> **Plaintiff** | No. 3:09cv2072 <br><br> (Judge Munley) |
| v. | |
| **COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS;** <br> **STATE CORRECTIONAL INSTITUTE OF MAHONEY;** <br> **JEFFREY A. BEARD, Ph.D,** Individually and in his official capacity as Secretary of the Department of Corrections; <br> **JOHN KERESTES,** Individually and in his official capacity of Superintendent; <br> **DON F. YOUNG,** Individually and in his official capacity as records supervisor; and <br> **JOHN DOES 1-10,** <br> **Defendants** | |

## ORDER

**AND NOW,** to wit, this 28th day of December 2010, the defendants' motion for summary judgment (Doc. 30) is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

BY THE COURT:


s/ James M. Munley
JUDGE JAMES M. MUNLEY
UNITED STATES DISTRICT COURT